LSK&D #: 294-2129 / 1878695
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
HERBERT HANSON, Individually And On Behalf
Of All Others Similarly Situated,

                                     Plaintiff,

              -against-

FRAZER, LLP, et al.,

                               Defendants.
-----------------------------------------------------------------x
TODD EDWARDS, Individually And On Behalf
Of All Others Similarly Situated,

                               Plaintiff

              -against-

FRAZER, LLP, et. al.,

                               Defendants.
-----------------------------------------------------------------x

**Civil Action : 1:12-cv-3166 (JSR)**

**Civil Action : 1:12-cv-04222 (JSR)**


# MEMORANDUM OF DEFENDANT FRAZER, LLP IN  SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED COMPLAINT


**LESTER SCHWAB KATZ & DWYER, LLP**
120 Broadway
New York, NY 10271
212 964-6611
Attorneys for Defendant FRAZER FROST, LLP



Lawrence A. Steckman, Esq.
  Of Counsel

# TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ....................................................................................... 1

THE COMPLAINT'S ALLEGATIONS.............................................................................. 1

ARGUMENT .................................................................................................................. 5

POINT I ........................................................................................................................ 5

      THE COMPLAINT FAILS TO STATE A RULE 10b-5
      CLAIM AGAINST FRAZER ................................................................................. 5

  1. Plaintiffs Have Failed to Properly Plead Misrepresentations or
     Omissions of Material Fact. .................................................................................. 5

      A. Plaintiffs' Claim Against Frazer for the Wang and Juntai
         Loans Should be Dismissed for Failure to State a Claim...................................... 5

      B. Plaintiffs' Claim Against Frazer for the SPDB Loan Should
         be Dismissed for Failure to State a Claim ......................................................... 10

  2. Plaintiffs Fail to Meet the "Stated Basis" Test of Auditor
     Liability. ........................................................................................................... 12

  3. Plaintiffs Fail to Properly Plead a "Strong Inference" of
     Fraudulent Intent. .............................................................................................. 15

      A. Doral Fin. Corp. Sec. Litig. Requires Dismissal of the
         Complaint ..................................................................................................... 16

      B. Plaintiffs' "Access" to Information Argument Should be
         Rejected ....................................................................................................... 20

      C. Plaintiffs' "Wire Advice" Argument Should be Rejected.................................. 21

      D. Plaintiffs' Allegations are, at Worst, Allegations of
         Negligence, Not Exchange Act Securities Fraud. .............................................. 22

      E. Plaintiffs' Allegations of GAAP Violations Are Not a Proper
         Fraud Pleading............................................................................................... 23

4.  The Complaint Fails the "Subjective Falsity" Test.........................................................24

POINT II ...................................................................................................................................... 25

    THE COMPLAINT SHOULD BE DISMISSED WITH
    PREJUDICE........................................................................................................... 25

CONCLUSION........................................................................................................................... 26

# TABLE OF AUTHORITIES

**Pages**

**Cases**

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544, 127 S.Ct. 1955 (2007)........................................................................ 5

Chill v. General Electric Co.,
  101 F.3d 263 (2d Cir. 1996) ................................................................................... 23

City of Brockton,
  540 F.Supp.2d at 473 ............................................................................................ 23

City of Roseville Employees' Retirement System v.
Nokia Corp.,
  2011 WL 7158548 (S.D.N.Y. 2011)........................................................................ 24

CRM Holdings, Ltd. Sec. Litig.,
  2012 WL 1646888 (S.D.N.Y. May 10, 2012) ......................................................... 25

Doral Fin. Corp. Sec. Litig.,
  563 F.Supp.2d 461 (S.D.N.Y. 2008) ........................................................... 16, 17, 25

Deephaven Private Placement Trading, Ltd. v.
Grant Thornton, LLP,
  454 F.3d 1168 (10th Cir. 2006) .................................................................. 12, 13, 14

Dronsejko v. Thornton,
  632 F.3d 658 (10th Cir. 2011) ................................................................................ 14

Duke Energy Corp. Sec. Litig.,
  282 F.Supp.2d 158 (S.D.N.Y. 2003) ........................................................................ 5

ECA, Local 134 IBEW Joint Pension Trust of Chicago v.
JP Morgan Chase Co.,
  553 F.3d 187 (2d Cir. 2009) ............................................................................. 11, 23

Edward J. Goodman Life Income Trust v.
Jabil Circuit, Inc.,
  595 F.Supp.2d 1253 (M.D. Fla. 2009)................................................................ 12, 14

Ellington Management Group, LLC v.
Ameriquest Mortg. Co.,
    2009 WL 3170102 (S.D.N.Y. 2009)....................................................................... 11

Fait v. Regions Fin. Corp.,
    655 F.3d 105 (2d Cir. 2011) ...................................................................... 24, 25

Fait v. Regions Fin. Corp.,
    712 F.Supp.2d 117 (S.D.N.Y. 2010) ............................................................... 24

Fidel v. Farley,
    392 F.3d 220 (6th Cir. 2004) ..................................................................... 22, 23

Foley v. Transocean Ltd.,
    2012 WL 933070 (S.D.N.Y. March 20, 2012) ................................................. 20

Fortress Credit Corp. v. Dechert LLP,
    89 A.D.3d 615, 934 N.Y.S.2d 119 (1st Dep't 2011) ........................................... 6

Freight Division Pension Fund v. Dynex Capital Inc.,
    531 F.3d 190 (2d Cir. 2008) ............................................................................ 17

Garber v. Legg Mason, Inc.,
537 F.Supp.2d 597 (S.D.N.Y. 2008)........................................................................ 20

In re Bayou Hedge Fund Litig.,
    534 F.Supp.2d 405 (S.D.N.Y. 2007), aff'd sub nom.,
    South Cherry Street, LLC v. Hennessee Group LLC,
    573 F.3d 98 (2d Cir. 2009). ...................................................................... 11, 18

In re Lehman Brothers Sec. and ERISA Litig.,
    799 F.Supp.2d 258 (S.D.N.Y. 2011) ............................................................... 12

In re Nextcard, Inc.,
    2006 WL 708663 (N.D.Ca. 2006) ...................................................................... 7

In re Royal Ahold N.V. Sec. & ERISA Litig.,
    351 F.Supp.2d 334 (D.Md. 2004)..................................................................... 23

In re Scottish Re Group Sec. Litig.,
    524 F. Supp. 2d 370 (S.D.N.Y. 2007) ........................................................ 15, 24

In re SmarTalk Teleservices Securities, Inc. Litig.,
    124 F.Supp.2d 505 (S.D. Ohio 2000) ............................................................... 14

Janbay v. Canadian Solar, Inc.,
   2012 WL 1080306 (S.D.N.Y. March 30, 2012) ................................................. 23

Janus Capital Group, Inc. v. First Derivative Traders,
   131 S.Ct. 2296 (2011) ................................................................................... 12

Kendall Square Research Corp. Sec. Litig.,
868 F. Supp. 26 (D. Mass. 1994) ...................................................................... 7

Kosovich v. Metro Homes, LLC,
   2009 WL 5171737 (S.D.N.Y. 2009) .......................................................... 14, 25

Lattanzio v. Deloitte & Touche LLP
   (Warnaco Sec. Litig.), 476 F.3d 147 (2d Cir. 2007) ........................................... 7

Lehman Brothers Sec. and ERISA Litig.,
   799 F. Supp.2d 258 .................................................................................... 13

Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc.,
   747 F.Supp.2d 406 (S.D.N.Y. 2010) ............................................................. 15

Novak v. Kasaks,
216 F.3d 300 (2d Cir. 2000) ...................................................................... 16, 19

O'Brien v. Price Waterhouse,
   740 F.Supp. 276 (S.D.N.Y. 1990) ................................................................ 22

Parmalat Sec. Litig.,
   376 F. Supp.2d 472 (S.D.N.Y. 2005) ............................................................ 12

Pollio v. MF Global, Ltd.,
   608 F.Supp.2d 564 (S.D.N.Y. 2009) ............................................................. 21

Rothman v. Gregor,
   220 F.3d 81 (2d Cir. 2000) ..................................................................... 16, 23

Schick v. Ernst & Young,
   141 F.R.D. 23 (S.D.N.Y. 1992) ................................................................... 20

Stephenson v. PricewaterhouseCoopers, LLP,
   768 F.Supp.2d 562 (S.D.N.Y. 2011) ............................................................ 21

Stevelman v. Alias Research, Inc.,
   174 F.3d 79 (2d Cir. 1999) ........................................................................ 23

Teamsters Local 445 Freight Div. Pension Fund v.
   Dynex Capital Inc., 531 F.3d 190 (2d Cir. 2008) ......................................... 11, 17

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
  551 U.S. 308, 127 S.Ct. 2499 (2007)..............................................................................5, 15, 16

Virginia Bankshares, Inc. v. Sandberg,
  501 U.S. 1083 (1991)..................................................................................................24

Warnaco Group, Inc. Sec. Litig. (II),
  388 F. Supp.2d 307 (S.D.N.Y. 2005) ..........................................................................7

Wood ex rel. U.S. v. Applied Research Associates, Inc.,
  328 Fed. Appx. 744, 2009 WL 2143829 (2d Cir. 2009),.............................................25

Wright v. Ernst & Young LLP,
  152 F.3d 169 (2d Cir. 1998) ........................................................................................7

## Statute

Private Securities Litigation Reform Act of 1995,
Pub.L. No. 104-67, 109 Stat. 737 ................................................................................1, 5

## Rules

Rule 10b-5 (17 C.F.R. §240.10b-5) ...............................................................................1, 5

## PRELIMINARY STATEMENT

Defendant independent auditor Frazer, LLP ("Frazer") submits this memorandum in support of its motion,  pursuant to Federal Rules 12 and 9 and the Private Securities Litigation Reform Act of 1995 (the "Reform Act") to dismiss plaintiffs' complaint dated June 26, 2012 (the "Complaint") with prejudice. Numbers in parentheses refer to paragraphs in the Complaint. Exhibits referenced herein are attached to the accompanying declaration of Lawrence A. Steckman dated July 10, 2012.  Frazer requests dismissal with prejudice.

## THE COMPLAINT'S ALLEGATIONS

This is a class action suit in which the Complaint, Ex. 1, alleges Frazer violated Section 10 of the Securities and Exchange Act of 1934 and Rule 10b-5 in connection with audit work it performed for nonparty China Natural Gas, Inc. ("CNG"). Plaintiffs base their Rule 10b-5 claim against Frazer on the following alleged misconduct.

First, Frazer is alleged to have failed to discover and disclose and/or subsequently cause to be included in a subsequent events disclosure for CNG's Form 10-K for year-end 2009 (1) an alleged related-party loan in the amount of $9,858,240 loan (extended to Ms. Taoxiang Wang (the "Wang Loan") (C¶¶45-47, 51), and (2) a loan of $4,401,000 (extended to Shanxi Juntai Housing Purchase Ltd (the Juntai Loan) (C¶¶48-49, 54, 57-58). Plaintiffs also allege neither loan was authorized by CNG's Board or properly signed off by CNG personnel (C¶99(h)).[1]

---

[1]     CNG's SEC filings state the related-party nature of the Wang Loan was not disclosed to Frazer or CNG's Board when it was made (C¶¶ 153).  The Complaint alleges that relatives of Mr. Qinan  Ji, the Company's CEO and Chairman ("Ji"), formed a company called Xi'an Demaoxing Real Estate Co., Ltd ("DMX") (C¶ 44).  A CNG subsidiary, Shaanxi Xilan Natural Gas Equipment Co., Ltd ("XXNGC"), made the Wang Loan to Ms. Wang who thereby obtained a 40% interest in DMX on January 21, 2010, which she used as collateral for the Wang Loan. (C¶¶45-46).  On January 26, 2010, the Wang Loan monies were remitted by Shaanxi Xilan to a DMX account (C¶47).  CNG's Board later concluded that because the DMX Promoters (allegedly Ji's friends) retained an "indirect beneficial interest" in DMX, after transferring their ownership interests, the Wang Loan should have been characterized as a "related party

Second, Frazer is alleged to have recklessly failed to identify a loan from Shanghai Pudong Development Bank in the amount of $17,676,000 (the "SPDB Loan") entered into on February 26, 2010, along with a related pledge of equipment and vehicles (by a CNG subsidiary XXNGC's so-called "variable-interest-entity") and a guarantee of repayment, which should have been, but were not described in CNG's 2009 Form 10-K (C¶¶56-58) and/or failed to cause same to be disclosed in a subsequent events note to CNG's 2009 annual report and consolidated financial statements (C¶¶ 32-34, 59-61, 65-66).

The alleged Frazer misrepresentations are contained in an opinion Frazer issued on March 10, 2010, included in CNG's 2009 Form 10-K (the "Frazer Opinion") (C¶69):

> We have audited the accompanying consolidated balance sheets of China Natural Gas, Inc. and subsidiaries . . . management is responsible for these consolidated financial statements. Our responsibility is to express an opinion on these consolidated financial statements based on our audits.
>
> We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board. . . We believe that our audits provide a reasonable basis for our opinion.
>
> In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of China Natural Gas, Inc. and subsidiaries as of December 31, 2009 and 2008. . . in conformity with accounting principles generally accepted in the United States. . .
>
> We also have audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), China Natural Gas, Inc. and subsidiaries' internal control over financial reporting as of December 31, 2009, based on criteria established in Internal Control-Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO), and our report dated March 10, 2010 expressed an unqualified opinion. (Emphasis added)  (C¶69).

---

transaction" (C¶¶51-53).  The Junati Loan is also alleged to have been a "related party transaction" because funds for it were CNG funds that benefitted DMX, allegedly owned and controlled by Ji's family members (C¶54, 58).

Plaintiffs allege the Frazer Opinion was false and misleading because CNG's financial statements were not presented in accordance with generally accepted accounting principles ("GAAP") and not audited in accordance with generally accepted auditing standards ("GAAS") (C¶ 78).  Plaintiffs allege CNG statements were not GAAP-compliant because (a) the accounting principles selected and applied in the preparation of the company's 2009 and 2010 year end financial statements and its 2010 and 2011 interim financial statements "did not have general acceptance"; (b) were "not appropriate in the circumstances" and (c) were "not informative of matters that affected their use, understanding and interpretation" (C¶ 80).  In addition, (d) Plaintiffs allege CNG's 2010 and 2011 interim financial statements "did not reflect the underlying events and transactions in a manner that presented the financial position and the results of operations within a range of acceptable limits that were reasonable and practicable to attain in financial statements," per CNG's restatements.  Id.

The allegations of reckless behavior on Frazer's part are set forth primarily in paragraphs 81-100 and are discussed in detail below in Point I.

In essence, Plaintiffs allege the Wang and Juntai Loans should have been but were not characterized and/or disclosed as "related party transactions" (C¶58) and that those loans, and the SPDB Loan (and pledge and guarantee) were not properly characterized and/or disclosed as subsequent events in footnotes in filings that post-dated the filing of CNG's Form 10-K 9 (and the Frazer Opinion) (C¶¶57, 59).  Plaintiffs allege scienter is properly pleaded because Frazer knew its audit opinion was "reckless" because it knew or was reckless in not knowing the public statements issued or disseminated by CNG (including the Frazer Opinion) were materially false and misleading, for the above described reasons (C¶ 182). Plaintiffs also allege Frazer knew its statements would be disseminated to the investing public and knew or "substantially participated

in" or "acquiesced in" the issuance or dissemination of the statements or documents "as primary

violations of the securities laws." Id.[2]

The following dates are set forth in the Complaint and/or documents to which it refers:

| | |
|---|---|
| January, 2010: | Wang Loan entered into (C¶¶19-30). |
| | Juntai Loan entered into (C¶¶48-50) |
| February 26, 2010 | CNG enters $17,676,000 SPDB loan (C¶32). |
| March 10, 2010 | CNG files Form 10-K for year end 2009 (C¶¶36, 69), with Frazer Opinion. |
| March 17, 2010 | SPDB transfers $13.2 million to a CNG subsidiary (C¶ 34). |
| April 22, 2010 | CNG begins repayment of Wang Loan and |
| April 27, 2010 | Completes repayment of Wang Loan, with interest[3] |
| April 29, 2010 | Frazer consents to incorporation of its opinion (C¶71). |
| May 7, 2010 | CNG Form 10Q filed for quarter ended March 31, 2010 (C¶63). |
| May 26, 2010 | Juntai Loan repaid, with interest.[4] |
| August 13, 2010 | CNG Form 10-Q filed for quarter ended June 30, 2010 |
| | First Restatement regarding SPDB Loan (C¶¶119-120) |
| September 15, 2010 | CNG announces Form 10K/A for year ended December 31, 2009 cannot be relied upon and amended Form 10-Q/A Second Restatement (C¶131) |
| December 6, 2010 | Frazer resigns as CNG's accounting firm (C¶ 73, 141). |

---

[2]     Plaintiffs allege the Frazer Opinion was incorporated by reference into CNG's Form 10-Qs for March 31, June 30 and September 30, 2010, which Frazer reviewed (C¶ 72).

[3]     The Wang Loan and payments were disclosed on CNG Form 10-Q for the period ended March 31, 2010, filed May 7, 2010, at 9, stating the Wang Loan was secured by Ms. Wang's 40% DMX ownership interest and that on April 22 and April 27, 2010 she repaid $5,868,000 and $4,130,962, paying off the Wang Loan, entirely, with $140,722 interest (Ex. 2 (relevant page), Ex. 3 (complete filing)).

[4]     See CNG Form 10-Q for period ended June 30, 2010 filed August 13, 2010, at 8 (Ex. 4 (relevant page), Ex. 5 (complete filing). Plaintiffs do not allege disclosure regarding these loans resulted in any change in any number set forth in CNG's financial statements.

## ARGUMENT

### POINT I

### THE COMPLAINT FAILS TO STATE A
### RULE 10b-5 CLAIM AGAINST FRAZER

The Complaint alleges a single claim under Rule 10b-5 (17 C.F.R. §240.10b-5) against

Frazer based on its alleged failure to discover errors for which CNG issued restatements, relating

to purported related party transactions. The pleading standard for scienter is governed by the

Reform Act, Pub.L. No. 104-67, 109 stat. 737, as amplified by <u>Tellabs, Inc. v. Makor Issues &</u>

<u>Rights, Ltd.</u>, 551 U.S. 308, 127 S.Ct. 2499, 2504-05 (2007) ("<u>Tellabs</u>") and <u>Bell Atlantic Corp.</u>

<u>v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 1964-1965 (2007) (<u>Twombly</u>).  Plaintiffs have not

properly pleaded any Frazer misrepresentation or omission of material fact.  They have not

properly pleaded Reform Act scienter.  Their pleading satisfies neither the "stated basis" test of

auditor liability nor the "subjective falsity" test.  Conclusory pleading should be disregarded. <u>See</u>

<u>Duke Energy Corp. Sec. Litig.</u>, 282 F.Supp.2d 158, 160 (S.D.N.Y. 2003) (Rakoff, J.) ("While the

Court must take as true all well-pleaded facts, conclusory allegations <u>must</u> be disregarded,"

dismissing Rule 10b-5 claim that improper mark-to-market accounting practices caused alleged

overstatement of revenues (emphasis added)).

    *1.*     *Plaintiffs Have Failed to Properly Plead Misrepresentations or Omissions of*
            *Material Fact.*

        *A.*     *Plaintiffs' Claim Against Frazer for the Wang and Juntai Loans Should be*
                *Dismissed for Failure to State a Claim.*

Plaintiffs' main allegations against Frazer regarding the Wang and Juntai Loans are set

forth in paragraphs 83-95.

Frazer's Opinion covered January 1, 2009 to December 31, 2009 (C¶69).

The Wang and Juntai Loans were entered into in January, 2010, after the Frazer audit period ended (C¶¶ 45, 50). Frazer learned of these loans during its quarterly review for the period ended March 31, 2010. Plaintiffs allege Frazer, following up on management assertions of GAAP compliance, *only* obtained a representation letter and then, *only* obtained a legal opinion from company counsel (C¶ 83). In fact, Frazer did exactly what it should have done. See Thomas M. Scove, Lawyering After Enron, 50-MAY Fed. Law. 32, 37 (2003) ("Auditors generally have no obligation to second-guess the company's GAAP treatment other than perhaps to inquire as to whether the company has a legal opinion on a particularly questionable matter.").

Frazer, on the basis of its audit work, did both second-guess CNG, obtaining a management representation letter and, then, it sought, in addition a legal opinion.

Plaintiffs pretend Frazer had yet a further duty to then second-guess the attorney that issued the opinion, but the law imposes no such burden generally. The Complaint, moreover, contains no allegations that suggest a factual basis upon which Frazer should have questioned the correctness of the legal opinion and competence of the attorney who prepared it which created yet another duty. There is no liability for fraud or even negligence in such circumstances. See Fortress Credit Corp. v. Dechert LLP, 89 A.D.3d 615, 934 N.Y.S.2d 119 (1st Dep't 2011) (opinion preparer not liable for fraud or legal malpractice where it had no reason to suspect lender's counsel had misrepresented information for preparation of legal opinion or provided fraudulent documents). Plaintiffs' claim that the Frazer audit amounted to "no audit at all" and rhetoric of "blind reliance" and "rubber stamps" is belied by the pleaded facts (C¶¶ 94, 110).

Nevertheless, even if Frazer should have done more than obtain both a management representation letter and, also, an opinion of counsel, this would, at worst, be negligence regarding one part of an audit relating to one document, a wire advice.

It would not be the total lack of an audit of a substantial company, as would be necessary to sustain an Exchange Act fraud.

Plaintiffs criticize Frazer's review of certain CNG interim statements, based on the same allegations (C¶¶106-110). The Complaint does not allege Frazer audited CNG quarterly statements. In the absence of an audit, interim reviews do not give rise to Exchange Act liability. See Lattanzio v. Deloitte & Touche LLP (Warnaco Sec. Litig.), 476 F.3d 147, 154-156 (2d Cir. 2007) (no Rule 10b-5 auditor liability for alleged misstatements in unaudited quarterly financial); Kendall Square Research Corp. Sec. Litig., 868 F. Supp. 26 (D. Mass. 1994) (auditor approval of quarterly financial statements not "the making of a material misstatement; at most, the conduct constitutes aiding and abetting and is thus not cognizable under Section 10(b).").

Frazer is not mentioned in CNG's quarterly statements, not alleged to have made any statements in them and should have no liability for them. See In re Nextcard, Inc., 2006 WL 708663 (N.D.Ca. 2006) (auditor approval of interim statements is at worst non-actionable aiding and abetting). Auditors are not liable for damages caused by errors in financial statements unless they audit them. See Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998); Warnaco Group, Inc. Sec. Litig. (II), 388 F.Supp.2d 307, 314 (S.D.N.Y. 2005).

In paragraph 86, Plaintiffs complain that (a) Frazer should have learned DMX was 100% owned by Ji's son and nephew, (b) Wang did not own any stock as of the date of the memorialized December 16, 2009 meeting purported to document discussion of loan terms with Wang and (c) neither Wang nor Juntai owned any DMX stock when the loan was negotiated. Plaintiffs fail to identify any document or information in Frazer's possession (or which it was required to seek and review) that should have brought these matters to light.

These assertions are bare conclusions.

7

Plaintiffs complain that DMX had no sales (turnover), equity of approximately $7.3 million so a Chinese credit company recommended extension of only a "small amount" of credit, that the loan CNG granted was about $7 million more than the worth of Wang's purported capital, and that Juntai purportedly pledged certain assets and 30% of the DMX shares, about $2.2 million of DMX's $7.3 million equity, and received a $4.4 million loan that was about $2 million larger than the value of Wang's collateral (C¶¶ 86 (d), (e) and (f)).

The Wang Loan, however, was paid back during the period in which Frazer was conducting its first quarter review, less than four months from the time it was made, with interest and, so, at that time, pledged assets were more than sufficient,[5] and no further audit procedure was needed, whatsoever. No factual allegation suggests any basis for a claim that any further audit procedure was required or that any audit procedure that should have been employed was not employed. See Form 10-Q filed May 7, 2010, at 9 (Ex. 2).[6]

The Juntai Loan was made and paid back in the first half of 2010. That loan was guaranteed not only by 30% of the DMX shares, as the Complaint alleges, but also by a 100%

---

[5]    Wang obtained a 40% ownership interest in DMX on January 21, 2010 (C¶45), and used that interest in DMX and its assets as collateral for the Wang Loan. On January 26, 2010, the Wang Loan funds were remitted to an account of DMX (C¶47). Plaintiffs allege that, also in January, 2010, XXNGC, the variable interest entity of Shaanxi Xilan, extended another loan of $4,401,000 to Shaanxi Juntai Housing Purchase Ltd. ("Juntai") (the "Juntai Loan"), which obtained a 30% ownership interest in DMX, on January 21, 2010 (¶48). DMX repaid the loan on April 22 and April 27, 2010, prior to maturity, paying $140,722 interest, Ex. 2.

[6]    Plaintiffs speculate that if different (unidentified) audit procedures had been employed, Frazer would have learned where the loan proceeds went because a "wire advice" said the "disbursement" was for "raw materials" (C¶¶ 84-85, 102). Aside from the hypothetical nature of the assertion about what "would have been discovered," which is not a proper basis for an Exchange Act claim, see infra, auditors are not under any general obligation to ask clients why money is directed to one account, rather than another, nor required to check on loan "purposes." Plaintiffs fail to plead any facts justifying a post-hoc imposition of such duties or a justification for their claim that the scope of Frazer's audit should have been "expanded."

guarantee from a third party (Mr. Chai Shijie) for the full amount of the loan, per the loan and guarantee agreement, as disclosed on Form 10-Q for the period ended March 31, 2010 filed on May 7, 2010, at page 7 (noting Juntai Loan is guaranteed by a third-party) (Ex. 2) and that this loan was repaid on May 26, 2010 with interest amounted to $87,923 (See Form 10-Q for the period ended June 30, 2010 filed August 13, 2010, at page 8 (Ex. 4); CNG Form 8-K dated September 21, 2011 (Ex. 6 (relevant page, at Item 4.02) ("Juntai used an individual guarantee and its 30% ownership interest in Demaoxing and its assets as collateral for the Juntai Loan. Xi'an Xilan remitted the Juntai Loan funds to an account designated by Juntai on January 8, 2010 and January 11, 2010. Management of the Company believed that the Loans were adequately secured by collateral" -- this filing also disclosed the related party nature of the Wang Loan and that key executives had hidden facts about the loan from the board and Frazer) (Ex. 7, complete filing).  CNG did not classify the Juntai loan as a related-party transaction.[7]

Paragraphs 86 (i) and (j) allege that there was no business purpose for the Wang and Juntai loans, and that the Wang and Juntai Loans were undisclosed "related party transactions." The financial notes to the 10-Q for the period ended March 31, 2010 filed on May 7, 2010 (Ex. 3) do not state that either loan was for a business purpose and, thus, there was no misrepresentation.

Plaintiffs allege Frazer did not properly confirm GAAP compliance because CNG obtained the legal opinion it provided to Frazer (C¶¶ 87-89), but they do not allege Frazer did not

---

[7]     Plaintiffs complain that the Wang and Juntai Loans were not approved by CNG's Board, as required (C¶86(h)) and that neither the Wang nor Juntai Loans were signed off by CNG's CFO and relevant department manager (C¶ 86(g)). Company filings indicate the Board learned of the Wang and Juntai Loans in April, 2010 (Ex. 7, at Item 4.02). CNG reclassified the Wang Loan from "Loan Receivables to Loan Receivables – Related Party," in its Form 10-K-A for 2010.

directly contact this third party attorney to discuss his opinion, nor that Frazer did not directly contact other people, including the guarantor of the Juntai Loan, in further diligence. Plaintiffs suggest Frazer should have lacked comfort that the attorney providing the opinion may not have had sufficient information or competence to issue the opinion, but they have no facts upon which to base this unsupported conclusion. [8]

B.   *Plaintiffs' Claim Against Frazer for the SPDB Loan Should be Dismissed For Failure to State a Claim.*

Plaintiffs allege Frazer failed to identify in February, 2010 that CNG obtained a $17.7 million bank loan and that its variable interest entity guaranteed the loan and pledged its equipment and vehicles as security and attacks Frazer for not causing CNG's 2009 year-end statements to disclose this "subsequent event" in a subsequent events note (C¶¶ 81, 92-93). Plaintiffs do not allege that CNG disclosed the existence of this loan to Frazer and so their pleading is deficient. More critically, Frazer sent CNG a Subsequent Events Checklist directly to CNG management, Ex. 8, expressly seeking direct confirmation as to whether CNG engaged in any borrowings. Id. The Checklist indicates it was filled out by CNG's Ms. Lily Wang who dated CNG's response March 10, 2010, the day CNG filed its Form 10-Q.

In response to Frazer's question as to whether CNG had borrowed money at any time since December 31, 2009, CNG did not check the box provided to indicate such borrowing; had occurred -- Frazer asked the question, and CNG provided false information. Plaintiffs do not allege CNG management ever advised Frazer that borrowing took place, by any means.

All of Plaintiffs' claims rest on the bare assumption that if Frazer had done something other than it did, the alleged fraud would have been disclosed, but this is pure speculation. See,

---

[8]   If this case proceeds past the dismissal phase, Frazer will provide affidavits setting forth the content of its direct discussions with opinion counsel and others in due diligence.

e.g., ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 198-199 (2d Cir. 2009) (rejecting argument that if transactions been reported properly, the "subterfuge" would have been exposed, leading to the public becoming aware of defendant's involvement, holding such allegations are "wholly conclusory"); Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 196 (2d Cir. 2008), (complaint dismissed where plaintiff failed to identify the reports or statements that *would have come to light* in a reasonable investigation and which would have demonstrated the falsity of the statements).  No alleged facts suggest Frazer was reckless with respect to any disclosure or test. Hypothetical "proper inquiry" arguments have been consistently rejected.

In Ellington Management Group, LLC v. Ameriquest Mortg. Co., 2009 WL 3170102, at *2-3 (S.D.N.Y. 2009), for example, this Court dismissed Rule 10b-5 claims where the complaint failed to allege defendants knew any statement made with respect to certain loans was untrue and failed to present facts showing defendants did not believe their statements:

> [T]he Court of Appeals, in considering similar hypothetical allegations (i.e., that violations *would have been discovered* had an inquiry been conducted), rejected precisely this approach to pleading fraud claims in South Cherry Street. (Note omitted).  As the Second Circuit noted in response to similar hypothetical allegations, to the extent that such allegations were meant to indicate that the defendant "represented that it had performed due diligence when in fact it had not done so, the factual allegations in the Complaint do not give rise to a strong inference that the alleged failure to conduct due diligence was indicative of an intent to defraud." 573 F.3d at 113. Likewise, plaintiffs here cannot substitute indirect, hypothetical allegations for more directly applicable factual allegations, particularly in light of the pleading requirements under Rule 9(b) and the PSLRA. Indeed, in the absence of concrete allegations that senior management knew of, but actively ignored the purported violations, "[e]ven an egregious failure to gather information will not establish 10b–5 liability as long as the defendants did not deliberately shut their eyes to the facts." In re Bayou Hedge Fund Litig., 534 F.Supp.2d 405, 415 (S.D.N.Y.

2007), aff'd sub nom., <u>South Cherry Street, LLC v. Hennessee Group LLC</u>,
573 F.3d 98 (2d Cir. 2009).[9]

2.    *Plaintiffs Fail to Meet the "Stated Basis" Test of Auditor Liability.*

Where an auditor states the basis for its opinion that the financial statements of a public
company present fairly the financial position of a company in accordance with GAAP, a
securities fraud pleading against the auditor must allege, pre-discovery and with a very high level
of particularity, why the auditor's "stated basis" is false or misleading or why the auditor did not
hold the opinion it expressed. See <u>Deephaven Private Placement Trading, Ltd. v. Grant
Thornton, LLP</u>, 454 F.3d 1168 (10th Cir. 2006) (affirming dismissal of Exchange Act Section 18
claims against auditor for lack of factual allegations contradicting "stated basis" of opinion).
<u>Deephaven</u> and its analysis have been applied to Rule 10b-5 claims in this District and
elsewhere. <u>See, e.g., In re Lehman Brothers Sec. and ERISA Litig.</u>, 799 F.Supp.2d 258, 302 n.
299 (S.D.N.Y. 2011) (Kaplan, J.) (applying <u>Deephaven</u> stated basis test to Rule 10b-5); <u>see also</u>
<u>Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.</u>, 595 F.Supp.2d 1253, 1281-83
(M.D. Fla. 2009) (applying <u>Deephaven</u>, dismissing Rule 10b-5 claims against auditor where no
non-conclusory factual allegations showed opinion was not legitimately held).

In <u>Deephaven</u>, investors alleged that they relied on auditor Grant Thornton's unqualified
audit opinions, and that when company financial statements were restated, a stock price decline
caused them injury. They alleged that the auditor's opinion that the company's financial
statements presented its financial position fairly in conformity with GAAP was an actionable

---

[9]    Plaintiffs allege Frazer "substantially participated in" or "acquiesced in" the issuance or
dissemination of false statements (C¶¶ 182). "Substantial participation" is not a sufficient basis
for an Exchange Act primary liability claim against an outside auditor and participation, no
matter how "substantial," is non-actionable aiding and abetting. See <u>Parmalat Sec. Litig.</u>, 376
F.Supp.2d 472, 504, n. 159 (S.D.N.Y. 2005). See also <u>Janus Capital Group, Inc. v. First
Derivative Traders</u>, 131 S.Ct. 2296, 2305 (2011).

statement of fact. The trial court dismissed the complaint and the Tenth Circuit affirmed,

beginning by noting that an auditor's statement of compliance with GAAS is opinion:

> Investors conveniently attempt to read Grant Thornton's opinion that the 1999 financial statements present Daw's financial position fairly in conformity with GAAP as an isolated statement of material fact. That is, Investors attempt to characterize it as a categorical statement separate from its stated basis. The audit report does not, however, allow for such a cropped reading. To the contrary, the audit report must be read in its entirety. When so read, it is readily apparent that the introductory paragraph tethers Grant Thornton's opinion to its stated basis: Grant Thornton's factual assertion that its audits were performed in accordance with GAAS and therefore provide an adequate basis for its opinion. It is against this backdrop that we must assess whether the SAC satisfies the PSLRA's statement-reason-and-basis requirements.

> Assuming *arguendo* that the SAC satisfies the statement requirement by specifying Grant Thornton's opinion as a false and misleading statement, it fails as to the reason requirement. Because Grant Thornton's opinion is couched in terms of a stated basis, a claim that the former is false or misleading must necessarily specify the reason or reasons why in terms of the latter. Such a showing would, for example, specify how (1) Grant Thornton did not actually form its opinion regarding the 1999 financial statements based on its audits; or (2) it did not have a reasonable basis for its opinion because it did not plan and perform its audits of the 1999 financial statements in accordance with GAAS. . .O[]ur review of the SAC reveals that Investors made no attempt to specify the reason or reasons why Grant Thornton's opinion was false or misleading in relation to the audits it performed. . . (note omitted) Simply alleging, as Investors do, that GAAP violations in 1999 financial statements rendered Grant Thornton's opinion materially false or misleading is inadequate.. .

Deephaven, 454 F.3d at 1175-76.   In Lehman Brothers Sec. and ERISA Litig., 799

F.Supp2d 258, 300-01, for example, Judge Kaplan, citing Deephaven, held:

> The Court is mindful of the fact that some courts have considered the sufficiency of securities claims against auditors based upon statements as to the compliance of financial statements with GAAP without regard to the significance of the fact that such statements have been couched as opinions and thus without regard to the importance of the fact-opinion distinction. [FN298] But the distinction is important. E & Y's statement regarding GAAS compliance inherently was one of opinion. In order for the TAC sufficiently to have alleged that it was false, it had to allege facts that, if true, would permit a conclusion that E & Y either did not in fact hold that opinion or knew that it had no reasonable basis for it.[FN299] (Emphasis added).

Here, Plaintiffs do not allege any facts suggesting Frazer did not believe its opinion was accurate, nor that Frazer did not form its opinion based on its audit, as Frazer's opinion states, nor that Frazer did not believe its audit complied with appropriate audit standards, as indicated. Although Plaintiffs parrot the language of general audit standards that they assert Frazer breached, they do not allege any that any particular document, report, analysis or information was disregarded or misunderstood, except the "wire advice," which they do not allege that Frazer ever saw. They do not allege any specific facts showing Frazer failed to follow appropriate audit standards in designing and conducting its audit.

Dismissal is appropriate under <u>Deephaven</u> and <u>Lehman</u>. <u>Accord</u> <u>Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.</u>, 595 F.Supp.2d 1253, 1281-83 (M.D. Fla. 2009) (dismissing Rule 10b-5 claim under <u>Deephaven</u>, holding pleading failed to properly contradict "stated basis" of auditor opinion, citing <u>In re SmarTalk Teleservices Securities, Inc. Litig.</u>, 124 F.Supp.2d 505, 518 (S.D. Ohio 2000) (allegations were a speculative attempt to connect generally stated GAAS violations with information discovered after the fact, to try to create the appearance of recklessness)). <u>See also</u> <u>Kosovich v. Metro Homes, LLC</u>, 2009 WL 5171737, *3-6 (S.D.N.Y. 2009) (Rakoff, J.) (rejecting conclusory statement that defendants "knew" representations were false and misleading as "bare allegations" where unaccompanied by facts on which statement was founded; even if facts were properly pleaded, they would still fall far short of a strong inference of intent); <u>Dronsejko v. Thornton</u>, 632 F.3d 658, 663-667 (10th Cir. 2011) (courts not required to accept conclusory allegations that an auditor acted recklessly, given Reform Act heightened pleading standards, relying on <u>Deephaven</u>).[10]

---

[10]    Plaintiffs attack companies that have become public through reverse mergers but do not allege the purported misconduct had anything to do with how CNG became a public entity.

3.     *Plaintiffs Fail to Properly Plead a "Strong Inference" of Fraudulent Intent.*

The Reform Act requires that an Exchange Act plaintiff plead, with a very high degree of particularity, facts giving rise to a "strong inference" of fraudulent intent, and that the inference be "cogent," which means "at least as compelling as any opposing inference of non-fraudulent intent." Tellabs, 127 S.Ct. at 2504-05. Here, the Complaint provides no reason why the inference of fraudulent intent is "at least as compelling" as available non-fraudulent explanations, e.g., lack of access to accurate information, CNG failing to disclose information or disclosing inaccurate information, or even a negligent audit, although no pleaded facts suggest any negligence on Frazer's part, whatsoever.

Plaintiffs do not identify any motive why Frazer would participate in a securities fraud with CNG. To plead a Rule 10b-5 case against an auditor, plaintiff must plead that the audit amounted to no audit at all, or show an egregious refusal to see the obvious, or investigate the doubtful, or show that the accounting judgments which were made were such that no reasonable accountant would have made the same decision. See Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc., 747 F.Supp.2d 406, 412 (S.D.N.Y. 2010); Scottish Re Group Sec. Litig., 524 F.Supp.2d 370, 398 (S.D.N.Y. 2007) (Plaintiffs must allege that "'[t]he accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful ....'"). Plaintiffs do not allege Frazer received, or had the prospect of receiving, any special compensation or benefit for its audit. Because Plaintiffs' allegations do not show that the judgments Frazer reached could not have been reached by a reasonable accountant, they have not alleged any strong circumstantial evidence of conscious misbehavior or recklessness as needed to hold an independent auditor liable under Rule 10b-5.

A.      *Doral Fin. Corp. Sec. Litig. Requires Dismissal of the Complaint*

Plaintiffs claim is that Frazer should have engaged in a more detailed investigation than it did, but this is a claim of negligence, not securities fraud and the their argument should be rejected.  This Court's holding in <u>Doral Fin. Corp. Sec. Litig.</u>, 563 F.Supp.2d 461 (S.D.N.Y. 2008) is on point.  Defendant Doral sold fixed rate non-conforming mortgages to banks and, in connection with the 'sales,' retained a portion of the interest to be paid on the mortgages known as an interest-only strip ('IO Strip'), booking a gain on the mortgage sales and valuing its pool of IO Strips using certain assumptions.  The Complaint alleged Doral did not truly "sell" the mortgages but was simply borrowing money collateralized by the mortgages and that "the assumptions utilized by Doral to value its IO Strips were not sound or independent but rather were manufactured by Defendants to conceal losses in the Company's portfolio of IO Strips."

These "frauds," the Complaint alleged, accounted for most of the changes in Doral's restated financials. Plaintiffs sued auditor PriceWaterhouse Coopers ("PwC") alleging Doral was able to conceal the frauds because four PwC audits and one report it issued were materially false.

Citing the Reform Act and <u>Tellabs</u>, this Court held:

> Where, as here, a defendant is an independent accountant, "the failure ... to identify problems with the defendant-company's internal controls and accounting practices does not constitute reckless conduct sufficient for § 10(b) liability." Novak v. Kasaks, 216 F.3d 300, 309 (2d Cir. 2000).  Similarly, "allegations of [violations of Generally Accepted Accounting Principles ("GAAP") ] or accounting irregularities, standing alone, are insufficient to state a securities fraud claim" against an independent accountant. Id. "Only where such allegations are coupled with evidence of 'corresponding fraudulent intent,' might they be sufficient." Id. (citations omitted). Stated a different way, the recklessness required to hold a "non-fiduciary accountant" liable for fraud "must, in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company." Rothman v. Gregor, 220 F.3d 81, 98 (2d Cir. 2000). Further, " '[w]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information.' "

Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 196 (2d Cir. 2008) (quoting Novak, 216 F.3d at 309).

Doral, 563 F.Supp.2d at 464-65.  Here, Plaintiffs do not set forth allegations indicating the existence of scienter on Frazer's part that approximate an actual intent to aid in a fraud – nothing more than purported accounting irregularities are alleged.  Plaintiffs do not allege Frazer reviewed specific reports or statements containing the relevant information, when Frazer was engaged in its audit, nor during its general review (not audit of) CNG interim statements, including one so-called "wire advice," as discussed above.   Doral continues, id. at 465:

> Here, plaintiffs' principal contention is that they have sufficiently pleaded "recklessness" as to satisfy the PSLRA (note omitted). A strong inference of recklessness, they claim, can be inferred from 1) the long time period over which Doral's fraud occurred; 2) the extent of Doral's fraud; and 3) PwC's alleged violations of GAAP and of Generally Accepted Auditing Standards ("GAAS") in conducting its audits of Doral. But in the context of the entire Complaint, none of these allegations gives rise to the requisite strong inference.
>
> The first major element of the fraud alleged in the Complaint is that Doral engaged in "side deals and oral agreements" that turned what appeared to be sales into loans. Complaint ¶ 3. Plaintiffs argue that, at the least, PwC was reckless in failing to discover the side deals. In the Complaint itself, however, these agreements are alleged to be "secret side agreements" concealed from anyone but management. See, e.g., id. ¶ 87. Similarly, the Complaint alleges that Doral engaged in "a deliberate practice of conscious misconduct at the highest levels of [its] management ... designed to surreptitiously mask the true terms and conditions of transactions." Id. ¶ 196. Taken as a whole, these allegations themselves suggest that PwC did not discover the fraud, not because of recklessness, but because Doral's management hid the fraud from PwC just as it did from the public at large.

Here, Plaintiffs allege [secret] related-party loan transaction(s) existed but that management did not report them to the CNG Board.  No facts suggest Frazer was aware of information triggering a duty of further inquiry. CNG states in its filings it was not told about the related-party nature of the Wang Loan, suggesting the reason Frazer did not discover the loan's related-party nature was because members of CNG management secreted it from CNG's Board, not because of any Frazer recklessness or fraud.  The same is true of the Juntai and SPDB Loans.

Plaintiffs do not plead any particularized facts suggesting Frazer recklessly disregarded or misunderstood any document or information, nor failed to ask for any document or information that should have been reviewed, under governing audit standards. Plaintiffs' theory is not that Frazer did not conduct an audit, but that it should have engaged in additional audit procedures to ferret out whether a loan (that it had no reason to suspect) should have been, post-audit, re-characterized as a "related party transaction." This, however, is not securities fraud – it is a conclusory allegation of non-Exchange Act-actionable, negligence. See In re Bayou Hedge Fund Litig., 534 F.Supp2d 405, 418 (S.D.N.Y. 2007). Doral continued:

> This competing inference is strengthened by consideration of the Complaint's allegations concerning the second major prong of Doral's fraud—faulty valuation of Doral's IO strips. Plaintiffs argue that PwC was reckless in not having discovered that Doral's valuation of the strips was problematic. . . [however] . . . given plaintiffs' extensive allegations that Doral falsified "independent" data on which PwC could properly have relied, the inference that PwC was reckless is not as compelling as the inference that PwC was, like the public, duped by Doral.

Id. at 465. Just as PwC's valuation depended on inaccurate information provided to it, Frazer relied on information CNG provided, and the most compelling inference is that it was not provided with adequate information regarding the Wang Loan.

CNG's filings show it was unaware of facts that it would later identify as the basis of its decision to issue restatements and to reclassify the Wang Loan from Loan Receivables to Loan-Receivables-Related Party, but no particularized, factual allegations suggest Frazer did anything improper in reaching the conclusions it did, at the time it did, based on information it had.

No factual allegations suggest its interim review was in any way "reckless," merely because the correct information had been secreted from CNG's Board. Doral continued:

> Accordingly, in view of the Complaint's own allegations about the secretive and manipulative manner in which Doral accomplished its fraud, it is impossible to draw a strong inference of PwC's scienter from either the length or extent of the fraud, or both, because the competing inference that PwC was also tricked by Doral is far more compelling. Id. at 466.

18

Here, neither the length nor extent of the alleged "fraud" is probative of any strong inference of fraudulent intent on Frazer's part.   In fact, the far stronger inference is that Frazer was tricked, because CNG's Board was "tricked," by whoever was supposed to report on the facts regarding the Wang Loan.   <u>Doral</u> continued,  563 F.Supp.2d at 466:

> As noted, plaintiffs also rely on the allegations that PwC violated GAAP and GAAS in conducting its audits of Doral. However, allegations that an independent auditor violated GAAP and GAAS *may* be sufficient to establish scienter "[o]nly where such allegations are coupled with evidence of 'corresponding fraudulent intent.' " *Novak,* 216 F.3d at 309. There is no such evidence in this Complaint.

Here, none of the factual allegations support an inference of fraudulent intent.

<u>Doral</u> continued, 563 F.Supp.2d at 466:

> In addition to their three general themes, plaintiffs also point to certain other allegations in the Complaint as adding to their showing, but none in fact does. For example, plaintiffs point to the allegation that a confidential informant, who was a "former Doral internal auditor[,] stated that he personally attended [Doral] Audit Committee meetings where representatives from defendant PwC were in attendance and the reports of the Internal Audit Department [which raised questions about the sufficiency of Doral's internal control] were discussed." Complaint ¶ 261. This allegation, however, is so vague as to be meaningless, because it contains no time frame within which the meetings occurred, no indication of where within the PwC hierarchy the "representatives" fell, and no information regarding how extensively or in what manner the reports were discussed. At most, the confidential informant's information may raise an inference that PwC was negligent in not following up on such discussions, but it certainly does not show the conscious turning away from the true facts required for recklessness.

Here, the allegations do not even support an inference that Frazer was "negligent" in not following up on whatever (presently-not-alleged-information) it had – but even if Frazer did not follow up on something, this would not be a proper allegation of "conscious turning away from the true facts required for recklessness," as the Reform Act requires.   No facts suggest Frazer's conduct was in any way deficient. <u>Doral</u>, 563 F.Supp.2d at 466-67, continued:

> The other allegations to which plaintiffs point are even more generalized and ambiguous than the information from the confidential informant. Plaintiffs allege

that PwC received over $6 million in fees from Doral between 2004 and 2004. Complaint ¶ 280. They also allege that PwC has been Doral's auditor since 1977 and "had virtually limitless access to information concerning the Company's operations," id. ¶ 276, that PwC "provided Doral with substantial non-audit services during the Class Period," id., and that "PwC's personnel were regularly present at the Company's offices and had continual access to, and knowledge of Doral's internal accounting records, its confidential financial and non-public[ ] business documents and employees." Id. ¶ 277. None of these allegations shows anything more than that PwC was Doral's auditor, a fact which is wholly insufficient to show PwC's scienter.

Without multiplying examples ad nauseam, the point is that, on the face of the Complaint itself, the inference that PwC was a victim of Doral's fraud is far more compelling than the inference that PwC acted with scienter.

The Complaint before this Court contains far weaker allegations than those in Doral.

Plaintiffs alleges little more than that Frazer was CNG's auditor who did not conduct an adequate review of the one document that Plaintiffs now contend would have disclosed the alleged fraud if it had been reviewed more extensively. Far more is needed to plead a sustainable Rule 10b-5 claim. See Schick v. Ernst & Young, 141 F.R.D. 23 (S.D.N.Y. 1992) (inference of fraud does not arise from mere fact auditor reported on allegedly inaccurate data; plaintiff must specifically allege the events which give rise to a strong inference that the auditor had knowledge of the misrepresentations or omissions); Garber v. Legg Mason, Inc., 537 F.Supp.2d 597, 618 (S.D.N.Y. 2008) ("Plaintiffs' generic, conclusory statement that fraudulent intent existed is simply not enough to meet the heightened pleading standards for securities fraud cases").

### B.    Plaintiffs' "Access" to Information Argument Should be Rejected

Merely alleging access to books and records (C¶101) is insufficient to plead a securities fraud claim. See Foley v. Transocean Ltd., 2012 WL 933070 (S.D.N.Y. March 20, 2012) (where scienter theory rests on adverse facts to which defendant supposedly had access, plaintiff must specifically identify the reports or statements containing this information, rejecting argument that access existed because it existed in databases, where plaintiffs failed to plead facts

showing defendant was aware of report in databases).   Here, Plaintiffs identify only one document – its main purported "red flag," which, as shown below, is no red flag.

### C.   Plaintiffs' "Wire Advice" Argument Should be Rejected

Plaintiffs rely heavily on a single document, a so-called "wire advice," claiming this document is a "red flag" which, if reviewed, would have resulted in an investigation that would have led to the discovery of the related party nature of the Wang Loan (C¶ 84-85, 102). However, plaintiffs do not allege that Frazer ever saw this document. For a document to be a red flag, it must actually have been known to the auditor. See Stephenson v. PricewaterhouseCoopers, LLP, 768 F.Supp.2d 562, 574-75 (S.D.N.Y. 2011) (dismissing scienter allegation where pleading failed to allege defendant was aware of purported red flags), aff'd, 2012 WL 1764191 (2d Cir., May 18, 2012):

> [P]leading the existence of red flags does not establish that a defendant was aware of those warning signals. See South Cherry St., 573 F.3d at 112 (holding that a complaint failed to allege scienter where it was "replete with allegations that [the defendant] ' *would* ' have learned the truth" regarding a company's fraudulent conduct "if [it] had performed" the " 'due diligence' " that it "promised" to the plaintiff) (emphasis added). . . the district court properly dismissed the SAC .

Plaintiffs not only do not allege Frazer ever saw the wire advice, but fail to set forth factual allegations supporting the proposition Frazer was ever obligated to have reviewed it in the first place.   Even if Frazer should have reviewed this wire advice, the allegation would still not be proper pleading of Exchange Act scienter, it would merely set forth one instance of negligence, regarding one document, overlooked during a quarterly review.

Plaintiffs have failed to identify a single document, communication, report, or piece of information that they have a factual basis for believing was ever in Frazer's possession that shows Frazer conducted a reckless or negligent audit or prepared a legally deficient audit opinion. The complaint is defective and should be dismissed.   See Pollio v. MF Global, Ltd.,

608 F.Supp.2d 564, 572-575 (S.D.N.Y. 2009) (Rakoff, J.) ("[The] Complaint fails to identify a single document, communication, report, or piece of information received by or in the possession of any defendant that indicates that MF Global's business condition, liquidity, or capital structure was in any way different or weaker than what was disclosed to the market. Although plaintiff baldly alleges that defendants "knew" but failed to disclose certain general "true facts" . . . the Complaint is entirely bereft of any facts to support such allegations. Accordingly, without any facts to support even a weak (let alone strong) inference of fraudulent intent, the Complaint also must be dismissed for failure to adequately plead scienter.").

> D.    *Plaintiffs' Allegations are, at Worst, Allegations of Negligence, Not Exchange Act Securities Fraud.*

Allegations amounting to claims of negligence do not state a claim under Rule 10b-5. See O'Brien v. Price Waterhouse, 740 F.Supp. 276, 280 (S.D.N.Y. 1990)(dismissing claims against auditor where plaintiff alleged the auditor falsely represented it tested the reasonableness of economic assumptions of an investment and was aware of impending financial difficulties which would impair the investment as allegations of negligence, not recklessness rising to the level of conscious behavior -- "[P]laintiffs have not alleged exactly what Price Waterhouse learned through the auditing process . . . and which creates an inference of fraudulent scienter. Similarly, the alleged failure of Price Waterhouse to investigate the factual representations made to it by other defendants – the so-called "assumptions" – does not create a strong inference of scienter, and at best states a claim for negligence.").

The interpretation of recklessness in auditor cases in which Rule 10b-5 claims are alleged is particularly strict. See Fidel v. Farley, 392 F.3d 220, 226 (6th Cir. 2004) ("'[W]hen the claim is brought against an outside auditor, we have concluded that 'the meaning of recklessness in securities fraud cases is especially stringent.'"). "[R]ecklessness on the part of an independent

auditor entails a mental state so culpable that it approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company." Fidel, 392 F.3d at 226; Rothman v. Gregor, 220 F.3d 81, 98 (2d Cir. 2000) (same).  To establish this approximation of actual intent to aid in the fraud, plaintiffs must show an audit "amount[ed] at best to a 'pretended audit.'" 220 F.3d at 98. "[E]ven if [the auditor] should have done more to attempt to uncover and disclose the alleged fraud, without factual allegations tending to establish knowledge of those practices on [the auditor's] part, an auditor's failure to do more is legally insufficient." In re Royal Ahold N.V. Sec. & ERISA Litig., 351 F.Supp.2d 334, 390 (D.Md. 2004).").

E.     *Plaintiffs' Allegations of GAAP Violations Are Not a Proper Fraud Pleading*

Plaintiffs also cite general audit standards they claim were violated, in a vain effort to plead scienter.  Aside from the conclusory nature of plaintiffs' allegations, violations of industry standards, in and of themselves, are not strong circumstantial evidence of conscious misbehavior or recklessness.  See  Stevelman v. Alias Research, Inc., 174 F.3d 79, 84 (2d Cir. 1999) (rejecting argument that defendant's "disregarding of GAAP and industry standards in its financial reporting is itself strong circumstantial evidence of conscious misbehavior or recklessness."); Chill v. General Electric Co., 101 F.3d 263, 270 (2d Cir. 1996) ("Allegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim."). Accord Janbay v. Canadian Solar, Inc., 2012 WL 1080306, at *14 (S.D.N.Y. March 30, 2012):

> GAAP errors alone do not establish scienter. See ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 200 (2d Cir. 2009) ("[A]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim.") (citation and quotation marks omitted); City of Brockton, 540 F.Supp.2d at 473 (same). The Plaintiffs have relied on the fact that CSI revised its 4Q09 income and profits, but a correction of financial statements standing alone does not raise an inference of

23

scienter. City of Brockton, 540 F.Supp.2d at 472 ("well settled that mere fact of a restatement ... does not support a strong, or even weak inference of scienter." (Citation omitted)).

4.    *The Complaint Fails the "Subjective Falsity" Test.*

A securities fraud defendant must have both an objective and subjective belief in the falsity of the subject representation. See Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1095-96 (1991) (to establish the falsity of an opinion in the fraud context, a plaintiff must establish its subjective and objective falsity); In re Scottish Re Group Sec. Litig., 524 F. Supp. 2d 370, 398 (S.D.N.Y. 2007) (applying Virginia Bankshares to audit opinion).  Plaintiffs do not allege Frazer did not honestly believe its opinion was completely accurate.

Here, plaintiffs allege Frazer misrepresented that its audit was conducted in accord with PCAOB standards and that CNG's financial statements complied with GAAP.  Both are matters of opinion governed by the subjective falsity test in Virginia Bankshares.  See Fait v. Regions Fin. Corp., 655 F.3d 105 (2d Cir. 2011) (observing that Judge Kaplan, in Fait v. Regions Fin. Corp., 712 F.Supp.2d 117, 120-125 (S.D.N.Y. 2010), held that an auditor's statements that financial results were presented in accord with GAAP and that its statement that the subject audits were conducted in accord with GAAS were statements of "judgment and opinion," not facts, requiring plaintiffs to set forth allegations of subjective falsity, under Virginia Bankshares, affirming dismissal of Rule 10b-5 claim, for lack of proper allegation of subjective falsity with respect to auditor's opinions).

Here, because Plaintiffs' allegations fail to provide a factual basis for their conclusory allegation that Frazer subjectively believed that CNG's financial statements were not GAAP compliant (and/or that its own audit was not conducted in accord with PCAOB standards), no sustainable Rule 10b-5 claim has been stated, and the Complaint should be dismissed. See City of Roseville Employees' Retirement System v. Nokia Corp., 2011 WL 7158548, at *9-10

(S.D.N.Y. 2011) (dismissing Rule 10b-5 securities claim where plaintiff's allegations did not show defendants had knowledge inconsistent with their public statements); CRM Holdings, Ltd Sec. Litig., 2012 WL 1646888, at *28 (S.D.N.Y. May 10, 2012) ("[insurance] Reserves are opinions, and the Complaint must allege facts showing 'that defendants did not truly hold those opinions [either knowingly or recklessly] at the time they were made public,'" citing Fait, 712 F.Supp.2d at 124-125).[11]

## POINT II

### THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

In Doral Fin. Corp. Sec. Litig., 563 F.Supp.2d 461 (S.D.N.Y. 2008) this Court granted PwC's motion to dismiss the Complaint with prejudice. Here, Plaintiffs filed a complaint, then a corrected complaint, then another complaint (by another lead counsel contender), and now another complaint. They have had more than sufficient opportunity to get it right, if there was really a claim, which there is not. Dismissal with prejudice is requested.

---

[11]     The Complaint should also be dismissed for lack of particularity under Rule 9 and the Reform Act. See Wood ex rel. U.S. v. Applied Research Associates, Inc., 328 Fed. Appx. 744, 2009 WL 2143829, at *2 (2d Cir. 2009) ("while Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations"); Kosovich v. Metro Homes, LLC, 2009 WL 5171737, 3 -6 (S.D.N.Y. 2009) (Rakoff, J.)(rule that fraud claims must be pleaded with particularity is applied assiduously to securities fraud cases).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:   New York, New York
      July 10, 2012

                      Respectfully submitted,

                      LESTER SCHWAB KATZ & DWYER, LLP

                      /s/ _____

                      Lawrence A. Steckman (LAS-8020)
                      Attorneys for Defendant
                      FRAZER, LLP (formerly known as Moore Stephens
                      Wurth Frazer Torbet)
                      120 Broadway
                      New York, New York  10271
                      (212)  964-6611

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 10, 2012, I caused to be electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following registered participants:

Thomas J. McKenna
Gainey& McKenna, LLP
440 Park Ave., South 5th Floor
New York, NY 10016

Gregory Egleston
Egleston Law Firm
440 Park Ave., South 5th Floor
New York, NY 10016

Fred Isquith, Esq.
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue
New York, NY  10016

Andrew J. Morris (*pro hac vice*)
MORVILLO LLP
1101 17th Street NW, Suite 1006
Washington, DC 20036


/s/ Lawrence A. Steckman
Lawrence A. Steckman

27